USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 10/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAQUEL WARLEY,

Plaintiff,

-against-

MERCY UNIVERSITY,

Defendant.

No. 24-cv-7634

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Raquel Warley ("Plaintiff") brings this action against Mercy University ("Defendant"). The Court construes the Amended Complaint as asserting federal claims of discrimination, failure to accommodate and retaliation under the American with Disabilities Act ("ADA").

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion to dismiss is GRANTED without prejudice as to Plaintiff's discrimination claim and DENIED as to Plaintiff's failure-to-accommodate and retaliation claims.

## BACKGROUND[1]

### I. Factual Background

The following facts are derived from the Amended Complaint ("AC") and Plaintiff's opposition brief and are taken as true and construed in the light most favorable to Plaintiff at this stage.[2]

Plaintiff was employed as a professor of Social Work at Mercy University from September 1, 2020, to August 24, 2023. (ECF No. 30, "AC" at ¶ 1.). Mercy University's Social Work program is in person. (*Id.* at ¶ 2.) Plaintiff taught her courses in person. (*Id.*) As part of her job responsibilities, Plaintiff conducted virtual admissions interviews for the Social Work program. (*Id.*) A substantial portion of the students in the Social Work program are Mercy University undergraduate students who declare social work as their major and enter the program in their junior year. (Pltf. Opp. at 3.) Plaintiff further alleges that admissions interviews for the Social Work program were historically conducted in person and "[p]rospective transfer students applying to an in-person program would reasonably expect, and be able, to attend in-person interviews." (*Id.* at 16.)

Sometime before February 1, 2023, Plaintiff began experiencing a deterioration of her vision. (AC at ¶ 2.) Plaintiff struggled to focus and see clearly. (*Id.* at ¶ 3.) This condition impaired Plaintiff's seeing, reading, working (particularly in screen-intensive academic functions), and daily activities like driving to work. (Pltf. Opp. at 10.) On February 1, 2023, Plaintiff informed Dr. Carol Bennett-Speight, the then interim professor of the Social Work program, that Plaintiff required a reasonable accommodation to conduct in-person admission interviews with prospective students

[1] The parties' briefs will be referred to herein as follows: Defendant's Memorandum of Law (ECF No. 45, "Dft. Mem."); Plaintiff's Opposition (ECF No. 42, "Pltf. Opp."); Defendant's Reply (ECF No. 48, "Dft. Reply").

[2] A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in her papers opposing the motion. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to the facts averred in the complaint).

(the "Requested Accommodation"). (AC at ¶ 2.) Plaintiff explained that her doctor advised her to reduce her screen time. (*Id.*) Initially, Plaintiff did not receive any objections to her Requested Accommodation. (*Id.* at 5.) On March 7, 2023, Dr. Bennett-Speight wrote to Plaintiff stating, "We need your assistance with interviews. Please let Grace know the days and times that will accommodate your schedule for the online social work interviews." (*Id.* at ¶ 6.) On the same day, Plaintiff reiterated the Requested Accommodation. (*Id.* at ¶ 3.) On April 19, 2023, Dr. Bennett-Speight wrote to Plaintiff stating, "In response to your availability for the May Social Work interviews, in-person interviews are not practical, as no students will be on campus. Please reconsider conducting virtual interviews for May." (*Id.* at ¶ 6.) After April 19, 2023, Plaintiff received no further communication regarding the Requested Accommodation. (*Id.* at ¶ 7.) Plaintiff alleges she was never assigned any students to interview after making the Requested Accommodation, despite repeatedly communicating her availability to conduct in-person interviews to both Dr. Bennett-Speight and the program's administrative assistant via regular email correspondence throughout the remainder of the admissions cycle. (*Id.* at ¶ 5.)

On July 26, 2023, Dr. Stuart Sidle, Dean of the School of Social & Behavioral Sciences, and Dr. Bennett-Speight forwarded Plaintiff's annual review to her for Plaintiff's review and signature. (*Id.* at ¶ 10.) The review stated that while Plaintiff was involved in ongoing scholarship, "her productivity is not commensurate with her stage on the tenure track. After three years, she has no peer-reviewed articles, even though both the Chair and the Dean have noted this in previous reviews." (*Id.* at ¶ 12.) Plaintiff declined to sign the review and contends that the review was in "stark contrast" to her previous evaluations. (*Id.* at ¶ 10.) For example, during the 2020-2021 academic year, Plaintiff's review praised her course design and delivery. (*Id.* at ¶ 10.) In Plaintiff's February 2022 review, Dean Sidle praised Plaintiff's contributions to the Social Work program,

and highlighted Plaintiff's ongoing scholarship projects. (*Id.* at ¶ 11.) Plaintiff contends that prior to the July 26, 2023 review, she never received any communication from Dr. Bennett-Speight, Dr. Ellen Sperber, Chair of the School of Social & Behavioral Sciences, or Dean Sidle about any conduct or performance issues. (*Id.* at ¶ 7.)

On June 9, 2023 and June 27, 2023, Plaintiff met one-on-one with Dean Sidle. (*Id.* at ¶ 8.) Plaintiff requested these meetings because Dr. Bennett-Speight "insist[ed] that Plaintiff participate in online interviews." (*Id.*) On July 28, 2023, Provost Eva Fernández met with Plaintiff via Zoom to discuss her grievances concerning Dean Sidle and Dr. Bennett-Speight. (*Id.* at ¶ 14.) On August 17, 2023, Plaintiff received an email from Provost Fernández about grievances filed against her by Dean Sidle, Dr. Carol Bennett-Speight and Dr. Ellen Sperber related to Plaintiff's conduct and performance. (*Id.* at ¶ 15.) Plaintiff alleges that these grievances were filed only after Plaintiff raised concerns with Dean Sidle about Dr. Bennett-Speight's conduct, and after Plaintiff filed a complaint with Provost Fernández regarding Dean Sidle's failure to appropriately intervene to protect her rights in the workplace. (*Id.*) In advance of meeting with Provost Fernández to discuss the allegations, Plaintiff inquired about the nature of the grievances. (*Id.*) Provost Fernández refused to provide Plaintiff with any information. (*Id.*)

On August 24, 2023, Plaintiff met with Provost Fernández and Madeline Martinez, the Executive Director of Human Resources. (*Id.* at ¶ 16.) At the meeting, Plaintiff was terminated "for a host of reasons," including "refusing to participate in admission interviews." (*Id.*) Plaintiff contends that the reasons for her termination were never raised in her prior meetings with Dean Sidle. (*Id.* at ¶ 9.)

Per Mercy University's Faculty Handbook, Plaintiff was entitled to appeal her termination before the Faculty Grievance Committee (the "Committee"), where Defendant had the burden of

proof regarding the claims of Plaintiff's conduct and performance problems. (*Id.* at ¶ 18.) Defendant appealed her termination and on November 13, 2023, a hearing took place before the Committee. (*Id.* at ¶ 18.) Plaintiff requested that Dr. Bennett-Speight, Dr. Sperber, and Provost Fernández be called as witnesses for their roles in advancing the alleged false claims and retaliating against Plaintiff following her Requested Accommodation. (*Id.* at ¶ 19.) Plaintiff's request was denied. (*Id.*) During the hearing, Defendant did not present any evidence to support the allegations concerning Plaintiff's conduct and performance. (*Id.* at ¶ 20.) During the hearing, Dean Sidle stated on the record that he was bothered by the fact that Plaintiff had raised complaints about Dean Sidle to his supervisor, Provost Fernández. (*Id.*) On November 27, 2023, the Committee recommended to Susan Parish, president of Mercy University, that Plaintiff be reinstated. (*Id.* at ¶ 21.) Plaintiff was not reinstated. (*Id.*)

## II. Procedural History

Plaintiff commenced this action on October 2, 2024. (ECF No. 1.) On May 23, 2025, Plaintiff sought leave to amend the Complaint. (ECF No. 28.) On July 7, 2025, the Court granted Plaintiff leave to amend the Complaint. (ECF No. 29.) On August 9, 2025, Plaintiff filed an Amended Complaint, which is the operative pleading in this action. (ECF No. 30.).

On November 24, 2025, Defendant sought leave to file a motion to dismiss the Amended Complaint. (ECF No. 35.) On January 16, 2026, the Court granted Defendant leave to file a motion to dismiss the Amended Complaint and set a briefing schedule. (ECF No. 41.) On April 30, 2026,

Defendant filed its memorandum of law and reply in support of its motion to dismiss. (ECF Nos. 44-49.) On the same day, Plaintiff filed her opposition to the Defendant's motion. (ECF No. 42.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, courts construe the pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24

(2d Cir. 2010) (internal quotation marks and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

The Court construes the Amended Complaint to assert claims of discrimination, failure to accommodate and retaliation under the ADA. Defendant moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 44.) The Court addresses Plaintiff's claims in turn.

### I. Discrimination

Section 102(a) of the ADA creates a private right of action for disability-based employment discrimination. 42 U.S.C. § 12112(a). To assert a claim for disability discrimination, a plaintiff must allege that: (1) plaintiff's employer is subject to the ADA; (2) plaintiff was disabled under the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff was fired or suffered an adverse employment action because of his or her disability. *Jordan v. Forfeiture Support Assocs.*, 928 F.Supp.2d 588, 605 (E.D.N.Y. 2013). Defendant disputes (i) that Plaintiff was disabled under the meaning of the ADA, and (ii) Plaintiff was terminated due to her disability. (Dft. Mem. at 4-7.)

#### a. Disability

When considering a claim under the ADA, the Court must construe the term "disability" broadly. 42 U.S.C. § 12102(4)(A). An individual has a disability under the ADA if she has "a

physical or mental impairment that substantially limits one or more major life activities," has a "record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1). As the Second Circuit has recognized, the term "substantially limits" is "not meant to be a demanding standard." *Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014). "Major life activities," includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

With respect to Plaintiff's vision impairment, Defendant argues that "nowhere in her complaint does Plaintiff allege that her blurred vision is a disability." (Dft. Mem. at 5.) In support of its argument, Defendant cites to *Cagle*, where the court dismissed a disability claim because plaintiff merely invoked the ADA without stating any facts that plaintiff was disabled. (*Id.*) However, unlike in *Cagle*, Plaintiff in this case invoked the ADA *and* alleged that she suffers from vision impairment. *See Cagle v. Weill Cornell Med.*, 680 F.Supp.3d 428, 438 (S.D.N.Y. 2023). Defendant further contends that even if blurred vision is a disability under the ADA, "Plaintiff fails to allege that her vision problems substantially limit one or more of her major life activities." (Dft. Mem. at 5.) However, the cases that Defendant cites in support of this argument stem from the *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999) line of cases. (*Id.*) Congress overturned *Sutton* through the ADA Amendments Act, wherein it clarified that *Sutton* "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress." U.S. Pub. L. 110-325. In the instant case, Plaintiff alleged that vision issues limited her ability to see, read, work and conduct other daily activities such as driving. (AC at ¶ 2-3; Pltf. Opp. at 10.) Therefore, Plaintiff plausibly alleges that her vision impairment was substantially limiting

and constitutes a disability under the ADA. *See DeFranco v. N.Y. Power Auth.*, 731 F.Supp.3d 479, 491 (W.D.N.Y. 2024) (finding plaintiff had a disability under the ADA because he alleged hearing loss and a resulting inability to hear instructions).

**b. Discriminatory Animus**

At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306, 311 (2d Cir. 2015)). Plaintiff does not meet the "minimal inference" standard: the record is devoid of any allegations, either direct or indirect, that Plaintiff was terminated *because* of her disability. Plaintiff fails to plead facts showing direct evidence of discrimination, such as inflammatory or discriminatory comments regarding Plaintiff's disability. *See, e.g.*, *Delia v. Donahoe*, 862 F.Supp.2d 196, 219-20 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment on discrimination claim based on his reassignment where Plaintiff "ha[d] not pointed to any direct evidence of discrimination, such as disparaging comments"); *Dooley v. JetBlue Airways Corp.*, 636 Fed.Appx. 16, 20 (2d Cir. 2015) ( Plaintiff additionally fails to plead facts showing indirect evidence of discrimination; for example, identifying any comparators whose treatment by Defendant would support an inference of discrimination. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)) ("A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination.").

Plaintiff contends that Defendant's proffered reasons for her termination were pretextual, as Defendant "recharacterized Plaintiff's adherence to medical restrictions as misconduct or poor performance." (Pltf. Opp. 11-12.) To demonstrate pretext, a plaintiff must plead facts that the

defendant's proffered "reason was false, and that discrimination was the real reason." *Sanchez v. Ct. Nat. Gas Co.*, 421 F. App'x 33 (2d Cir. 2011). "[T]emporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). Here, Plaintiff principally relies on the disparity between her favorable February 2022 performance evaluation and the negative evaluation she received approximately seventeen months later, in July 2023. (AC at ¶¶ 10–13.) The existence of an earlier favorable evaluation does not, without more, plausibly suggest that the subsequent criticisms were motivated by discriminatory animus. Indeed, the evaluations assessed Plaintiff's performance at different points in her employment. Accordingly, Plaintiff has not alleged sufficient facts to support a plausible inference of discriminatory animus, and her ADA discrimination claim must therefore be dismissed.

## II. Failure to Accommodate

To state a failure-to-accommodate claim, Plaintiff must plausibly allege that Plaintiff "(1) [i]s a person with a disability under the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job; and (4) the employer has refused to make such accommodations." *See McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013). Defendant disputes (i) that Plaintiff has a disability under the meaning of the ADA, (ii) that Plaintiff requested reasonable accommodations, and (iii) that Defendant denied such a request. (Dft. Mem. at 7-9.) As the Court already found that Plaintiff has a disability under the meaning of the ADA, *supra* section I.a, the Court limits its discussion to the two latter arguments.

### a. Reasonable Accommodations

The ADA requires employers to make "*reasonable* accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or

employee." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F.Supp.2d 567, 581 (S.D.N.Y. 2008) (emphasis in original) (quoting 42 U.S.C. § 12112(b)(5)(a)). Reasonable accommodations may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, but it does not mean elimination of any of the job's essential functions. *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (quoting *Hall v. U.S. Postal Servs.*, 857 F.2d 1073,1078 (6th Cir. 1988). "At the motion to dismiss stage, the [Defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 438 (E.D.N.Y. 2015) (quoting *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F.Supp.2d 470, 482 (S.D.N.Y.2013)). Whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis. *Schoengood v. Hofgur LLC*, 2021 WL 1906501, at *3 (E.D.N.Y. May 12, 2021) (quoting *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999)).

Here, Plaintiff has sufficiently alleged that her request to conduct in-person admissions interviews constituted a reasonable accommodation. Plaintiff alleges that, following her doctor's recommendation, she requested permission to conduct admissions interviews in person rather than virtually to reduce screen time. (AC at ¶¶ 2–3.) Plaintiff argues that the Requested Accommodation would have permitted her to continue performing her interviewing responsibilities. (Pltf. Opp. at 15-16.) Defendant argues that the requested accommodation was impractical because prospective students would not be on campus. (Def. Mem. at 8.) However, Plaintiff alleged that the Social Work program is conducted in person, and that a substantial portion of admitted students are existing Mercy University undergraduates who are already present on campus. (Pltf. Opp. at 17.) While whether in-person interviewing is a reasonable accommodation is a fact-intensive inquiry

that cannot be resolved at the motion to dismiss stage, the Court finds that, at this stage, Plaintiff has alleged sufficient facts that the Requested Accommodation was reasonable.

**b. Refusal To Make Reasonable Accommodations**

A refusal of a request for a reasonable accommodation can be both actual or constructive. *Perkins v. City of New York*, 2023 WL 370906, at *3 (S.D.N.Y. Jan. 24, 2023). Defendant argues that it never denied a request for accommodations because "Plaintiff does not allege the [Defendant] refused to allow her to conduct in-person interviews or compelled her to conduct virtual ones." (Def. Mem. at 8–9.) Here, Plaintiff alleges that, after making her request, Defendant subsequently informed her that in-person interviews were impractical and sought to have her conduct virtual interviews instead. (AC at ¶¶ 5–6.) Although Defendant emphasizes that Plaintiff was never compelled to conduct virtual interviews (Dft. Mem. at 9), Plaintiff alleges that Defendant cited her refusal to participate in admissions interviews as one of the grounds for her termination. (AC at ¶ 16.) Thus, Defendant's alleged decision to penalize Plaintiff for refusing to conduct the very interviews for which she sought an accommodation is sufficient to plausibly allege that Defendant refused to accommodate her request. Accordingly, Plaintiff has plausibly pled a failure-to-accommodate claim under the ADA.

**III. Retaliation**

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she participated in an activity protected by the ADA; (2) her participation was known to Defendant; (3) Defendant subjected her to a material adverse action; and (4) a causal connection existed between the protected activity and the adverse action. *Natofsky v. City of N.Y.*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). Defendant disputes (i) that Plaintiff engaged in an activity protected by the ADA, and (ii) that a causal

connection exists between any protected activity and her termination. (Dft. Mem. at 9-10.) As the Court already found that Plaintiff engaged in an activity protected by the ADA,[3] the Court limits its discussion to Defendant's contention that there is no causal link between the Requested Accommodation and the termination.

**a. Causal Connection**

"[A] plaintiff must prove that 'but for' the disability, the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky*, 921 F.3d at 347). "Proof of causation can be established either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id*. (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Defendant argues that Plaintiff has failed to establish the requisite causal connection because she does not allege any direct evidence of retaliatory intent, identify similarly situated comparators who were treated more favorably, or demonstrate sufficient temporal proximity between her accommodation request and termination. (Dft. Mem. at 10-12.) These arguments are unavailing. The Second Circuit has recognized that "a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023); *see also Gorzynski*, 596 F.3d at 110 (five months); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight months). Here,

[3] Defendant agrees that "requesting a reasonable accommodation can be protected activity." (Dft. Mem. at 10.) As the Court found in section II.a, Plaintiff plausibly alleged that she requested a reasonable accommodation.

approximately six months elapsed between Plaintiff's Requested Accommodation and her termination. Although temporal proximity alone may not necessarily establish a causal connection, Plaintiff additionally alleges that Defendant expressly identified Plaintiff's refusal to conduct virtual interviews—the very activity for which she sought an accommodation—as one of the grounds for her termination. (AC at ¶ 16.) Accordingly, Plaintiff has plausibly pleaded a causal connection sufficient to sustain her ADA retaliation claim at this stage.

## IV. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend her Complaint to cure the deficiencies identified in her ADA discrimination claim. Further, to the extent Plaintiff seeks to assert claims under New York State law, she must clearly identify those causes of action in her amended complaint.[4] *See* Fed. R. Civ. P. 8(a)(2) (requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED without prejudice as to Plaintiff's discrimination claim and DENIED as to Plaintiff's failure-to-accommodate and

[4] Defendant construed Plaintiff's Complaint as asserting claims under the ADA and accordingly addressed only those claims in its motion to dismiss. Although Plaintiff makes a passing reference to state law in her opposition brief, she does not identify any specific state law causes of action. (Pltf. Opp. at 7.) In recognition of the liberal construction afforded to *pro se* pleadings, the Court grants Plaintiff an opportunity to clarify whether she intends to assert any state

retaliation claims. Plaintiff is granted leave to file a Second Amended Complaint by December 9, 2026. Should Plaintiff file a Second Amended Complaint, Defendant is directed to answer or otherwise respond by January 11, 2027. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Second Amended Complaint. If Plaintiff fails to file a Second Amended Complaint within the time allowed, the discrimination claim shall be deemed dismissed with prejudice. The Clerk of the Court is directed to terminate the motion at ECF No. 44.

Dated: October 23, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

law claims in the Second Amended Complaint. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)